UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Criminal No. 15-10150-GAO |
| ) | |
| **MITCHELL DANIELLS,** ) | |
| Defendant. ) | |

**GOVERNMENT'S MEMORANDUM REGARDING PRE-TRIAL ORDER OF DETENTION**

I.   **BACKGROUND**

The government moved for the detention of **Mitchell DANIELLS** under the following grounds supporting that he is both a danger and poses a serious risk of flight: 18 U.S.C. § 3142(f)(1)(E) – the offense involves a firearm, 18 U.S.C. § 3142(f)(2)(B) – the defendant poses a serious risk of obstruction or attempt to tamper with a witness, and 18 U.S.C. § 3142(f)(2)(A) – the defendant poses a serious risk of flight.  The defendant is presently charged with possession of a firearm while under indictment, in violation of 18 U.S.C. § 922(n). The government has indicated that it will charge the defendant with dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A).  The government believes that the gun trafficking scheme of **DANIELLS** presents an intolerable risk to the community, discussed briefly below.

## II.  THE GOVERNMENT'S CASE AGAINST MITCHELL DANIELLS

### A. The Gun Sale to Timothy Bailey

On the days leading up to the gun transaction, Timothy BAILEY spoke with **DANIELLS** and, knowing that **DANIELLS** had access to firearms in the past, asked if **DANIELLS** would sell him guns. **DANIELLS** agreed, and they arranged a gun purchase in the coming days. BAILEY said that at some time between noon and 2:00 p.m. on March 30, he and **DANEILLS** met behind the brick apartment building at 375 Columbus Ave. in the South End, where **DANIELLS** sold BAILEY a 9mm pistol and disassembled and reassembled it for BAILEY's education.

Later that same day, BAILEY sold the gun to an ATF CW.

### B. The Guns Transportation

ATF agents continued to investigate and located several witnesses that have provided that they accompanied **DANIELLS** to Pennsylvania to get guns to bring back to Massachusetts for sale. For example, Witness 1 stated that on or about February 2015, **DANIELLS** asked him to travel down to Pennsylvania with him. Witness 1 agreed to drive there in his vehicle. Witness 2 also joined them on the trip.

Witness 1 recalled that they eventually met with the straw purchaser. **DANIELLS** had a gun store flyer and spoke to the straw purchaser about it. Witness 1 then realized that they had travelled to Pennsylvania to purchase firearms. At that point, Witness 1

2

confronted **DANIELLS**, who confirmed his suspicions. **DANIELLS** told him him that he was going to purchase firearms to bring back to Massachusetts. **DANIELLS** also told him that he would remove the serial serial numbers from the firearms. Witness 1 then witnessed a sale of one of the guns obtained to another person in Framingham, MA.

### C. The Search Warrant Execution

On August 31, 2015 ATF agents learned during an interview of Witness 1 was friends with **DANIELLS** since second grade. Witness 1 said he travelled to PA with **DANIELLS** in February 2015 where **DANIELLS** obtained four handguns which **DANIELLS** subsequently took back to MA to sell, described above. Witness 1 said **DANIELLS** told him he removed the serial numbers. Witness 1 said **DANIELLS** took four or the firearms to his apartment and left a short time later with three of the firearms. Witness 1 said **DANIELLS** told him he was selling the three firearms to a Hispanic male on Beaver Terrace Circle in Framingham. Witness 1 later identified this individual from an eight person array. Witness 1 said a week later (in February 2015) he went to **DANIELLS**' mother's house with two females.

On September 28, 2015, the ATF executed a federal search warrant at **DANIELLS**' mother's house, 28C Interfaith Terrace in Framingham, MA. They seized, in part: firearms keys; dremel tool attachments (used to remove serial numbers from guns); and an ammunition box.

This address, 28C Interfaith Terrace in Framingham, is the

residence that the defendant submits he should be release to while the case is pending. See Defendant's Motion for Pretrial Release on conditions, docket entry # 63.

### III. THE DETENTION HEARING

Special Agent Brian Oppedisano of the ATF was the only witness called to testify at the hearing.  Defense counsel cross-examined Special Agent Oppedisano, but presented no witnesses in the hearing.

SA Oppedisano provided an overview of the case against **DANIELLS**, including that **DANIELLS** had purchased 14 guns in Pennsylvania and was arrested in March 2014 in Massachusetts with one of the guns. **DANIELLS** was out on bail on the matter when he committed the crimes charged here.  SA Oppedisano described that a straw purchaser bought 8 more guns in Pennsylvania for **DANIELLS.**  One of the guns bought by the straw purchaser for **DANIELLS** was sold by **DANIELLS** to Bailey, described above.

Only 5 of the 22 guns **DANIELLS** bought himself, or had a straw purchaser buy, have been recovered -- 4 in Massachusetts and one in New York City.  SA Oppedisano also described that several of the guns were recovered in Boston connected to persons known to be street gang members by the Boston Police department.

SA Oppedisano provided that when the ATF began investigating after the recovery of guns, **DANIELLS** told the straw purchaser during a recorded telephone call to essentially lie to the ATF.  In a second

4

recorded telephone call, **DANIELLS** and the straw purchaser discussed whether the serial numbers had been removed from the guns.

SA Oppedisano described that **DANIELLS** lived from place to place and traveled nationally for work with driver's license in multiple states.

## VI.   ARGUMENT

### A. The Danger to the Community

**DANIELLS** presents a danger and detained him based on the nature and seriousness of the charges, as well as his conduct in assisting in the purchase, transportation and sale of as many as of 22 firearms into Boston from Pennsylvania.  In this regard, it bears emphasizing that the definition of "danger to the community" under the Bail Reform Act extends beyond mere physical violence.  United States v. Patriaca, 948 F.2d 789, 792, n.2 (1st Cir. 1991); United States v. Tortora, 922 F.2d. 880, 884 (1st Cir. 1990) (citing S.Rep.No. 225, 98th Cong., 2d Sess. 4-12, reprinted in 1984 U.S. Code Cong. & Admin. News at 3182, 3187-95).  "The Congress was apparently concerned with the safety not only 'of a particular identifiable individual, perhaps a victim or witness,' but also of the community as a whole." United States v. Delker, 757 F.2d 1390, 1393 (3rd Cir. 1985).

There is a steady supply of illegal guns in urban cities like Boston highlighting the danger associated and the need to detain those involved in providing such dangerous weapons to criminals.  For

example, in 2012 ATF traced 500 guns seized through law enforcement efforts in the city. In 2013, the number of guns seized and traced increased to 540, and increased to 598 guns in 2014.

Stemming the supply of guns to the hands of violent offenders requires an ongoing effort by law enforcement, as gun violence is epidemic in this country. The daily newspaper describes the seriousness of gun violence and the need to deal with firearms cases accordingly. See United States v. Politano, 522 F.3d 69 (1st Cir. 2008) (in affirming above-guideline sentence in firearms trafficking case, the First Circuit noted sentencing judge's reference to the "epidemic of handgun violence in communities within this district" and concluded that the district court "has the authority to conclude that the impact of this particular offense is more serious than that reflected by the Sentencing Commission.").

"Gun violence remains a serious public health and safety problem in the United States. In 2009, a total of 9,146 people were murdered with firearms, and it is estimated another 48,158 were treated in hospitals for gunshot wounds received in assaults." Andrew V. Papachristos, Ph.D., Anthony A. Braga, Ph.D. & David M. Hureau, M.P.P., *Six-Degrees of Violent Victimization: Social Networks and the Risk of Gunshot Injury* 3 (February 28, 2011).

Illegal guns used to commit violent crimes are obtained from those persons selling them - like **DANIELLS**. It follows that

participating in the illegal transportation of guns is not a victimless crime. Certainly the effect of the defendant's crimes is a ripe area for analysis. As crime researchers from academic institutions have recently observed:

> This research suggests that serious violent victimization and offending is concentrated among young minority males who are engaged in criminal activity, use violent means to settle disputes, have easy access to firearms and other weapons, and reside in socially and economically disadvantaged neighborhoods. Furthermore, indirect exposure to gun violence—such as living in a high-violent neighborhood—is also associated with a host of negative health outcomes, including PTSD, depression, psychobiological distress, anxiety, cognitive functioning, and suicide, as well as other negative social behaviors such as school dropout, increased sexual activity, running away from home, and engagement in criminal and deviant behaviors.

Andrew V. Papachristos, Ph.D., Anthony A. Braga, Ph.D. & David M. Hureau, M.P.P., *Six-Degrees of Violent Victimization: Social Networks and the Risk of Gunshot Injury* 3 (February 28, 2011).

The defendant's conduct during and around this arrest demonstrate the very real threat of further criminal behavior and the resulting danger that the defendant presents were he to be released under any conditions. See also United States v. Carswell, 144 F.Supp. 2d 123, 138 (N.D.N.Y. 2001) ("elaborate conditions dependent upon good faith compliance are sometimes insufficient when a defendant's criminal history provides no basis for believing good faith will be forthcoming"). The seriousness of the crimes he has committed support the conclusion that he is a danger to the community

and should therefore be detained.

### B. The Obstruction/Tampering

This factor also weighs heavily in support of detention as **DANIELLS** told the straw purchaser to lie to the ATF during the investigation.  Given that he already tried to obstruct justice (albeit unsuccessfully) there is a reasonable likelihood he will ignore any court order and do it again.

### C. The Risk of Flight

As described above, **DANIELLS** has no real ties to this area.  He travels constantly for work and has more significant ties to Pennsylvania, as well as other states.  Moreover, and perhaps the strongest factor supporting risk of flight, **DANIELLS** violated the state court Judge's order to not commit any crimes while out on bail on that matter when he instead trafficked in firearms.  Finally, the residence that he proposes – his mother's address at 28C Interfaith Terrace in Framingham is a location where **DANIELLS** committed acts on his gun trafficking scheme including removing the serial numbers from guns.  It most certainly is inappropriate as a release residence.

## VII.     CONCLUSION

Based on the foregoing, the United States of America requests that the Court order that the defendant be detained pending trial

on the Government's Motion for Detention.

                                      Respectfully Submitted,

                                      CARMEN M. ORTIZ
                                      United States Attorney


                            By:  <u>s/ Glenn A. MacKinlay</u>
                                  GLENN A. MACKINLAY
                                  Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

This is to certify that I served a copy of this memorandum on the below efiling:

COUNSEL OF RECORD

By: <u>s/ Glenn A. MacKinlay</u>
Glenn A. MacKinlay
Assistant U.S. Attorney

Dated:    June 7, 2016