UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 15-10150-GAO

UNITED STATES OF AMERICA,

v.

MITCHELL DANIELLS,
Defendant.

ORDER
May 23, 2017

O'TOOLE, D.J.

This Order resolves the following pending motions:

1. The defendant's Assented-To Motion for Leave to Extend Deadline to File Pretrial Motions (dkt. no. 136) is GRANTED *nunc pro tunc*.

2. The defendant's Assented-To Motion to Continue Suppression Hearing for a Date Set by Court after His Filing Date (dkt. no. 137) is GRANTED *nunc pro tunc*.

3. The defendant's Motion to File Two Pleadings under Seal (dkt. no. 139) is GRANTED. Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include –Leave to file granted on [date of order]– in the caption of the document.

4. After review of the relevant papers, and having received no objections to the magistrate judge's Report and Recommendation (dkt. no. 115) recommending denial of the defendant's Motion for Reconsideration of Detention Hearing (dkt. no. 109), the Report

and Recommendation is ADOPTED and the defendant's motion for reconsideration is DENIED.

It is SO ORDERED.

                                                       /s/ George A. O'Toole, Jr.
                                                       United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
|  | ) | |
| vs. | ) | CRIMINAL ACTION |
|  | ) | NO. 15-10150-GAO |
| MITCHELL DANIELLS, | ) | |
| Defendant. | ) | |
|  | ) | |

REPORT AND RECOMMENDATION ON #109, DEFENDANT'S
MOTION FOR RECONSIDERATION OF DETENTION

February 16, 2017

KELLEY, U.S.M.J.

The defendant is charged by indictment with violating 18 U.S.C. § 922(n), possession of a firearm by a person under indictment for a felony offense. Mr. Daniells was indicted on June 16, 2015. He was arrested on June 18, and had his initial appearance in this court on that date. The government moved for detention under 18 U.S.C. § 3142 (f)(1)(E) (offense involves a firearm);(f)(2)(A) (serious risk of flight); and (f)(2)(B) (serious risk that person will obstruct justice), arguing that he is a danger to the community and poses a serious risk of flight. On June 25 he was arraigned and had a detention hearing, but after cross-examining the government's witness, defense counsel asked for a continuance to July 1, 2015 to conclude the hearing. On July 1 counsel asked the court to enter a voluntary order of detention, which the court did (#19).

On May 25, 2016, defendant moved for release (#63). A detention hearing was held before this court on June 17, 2016 where the parties proceeded by proffer. On that same date

1

the court issued an order allowing the government's motion for detention (#69). The court found that the government met its burden on danger but not on risk of flight, i*d*. at 5-6.

Mr. Daniells appealed the order of detention to the District Court, O'Toole, J. (#74). Judge O'Toole held a hearing on June 30, 2017 and took the matter under advisement (#77). Judge O'Toole ordered a transcript of the detention hearing of June 17, 2016 (#75), and ordered Pretrial Services to update the report that previously had been prepared (#78). The government and defendant filed memoranda (##80, 81.) On August 1, Judge O'Toole denied the motion for release from custody (#82). He disagreed with this court's finding that Mr. Daniells was not a flight risk, and found that Mr. Daniells was both a danger and a flight risk, i*d*. at 2.

Mr. Daniells appealed the District Court's order to the First Circuit on August 5, 2016 (#86). That appeal was denied on October 31, 2016 as the First Circuit found that it would not reach "a different result" and that affirmance was appropriate, citing *United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990) (#104). Defendant then moved for reconsideration before the District Court (#109), which motion was referred to this court on January 12, 2017 for a report and recommendation (#111).

I. FACTS

The government charges that Mr. Daniells, who had a license to buy guns in Pennsylvania, bought a number of guns himself there and also from a straw purchaser, and illegally sold them in Massachusetts. The government avers that Mr. Daniells sold a gun to his co-defendant, Timothy Bailey, on March 30, 2015 and that Mr. Bailey sold the same gun to a cooperating witness the next day. Several witnesses tell the government that they accompanied Mr. Daniells to Pennsylvania to acquire guns to bring to Massachusetts to sell. One witness, a

childhood friend of Mr. Daniells', travelled to Pennsylvania with Mr. Daniells in February 2015 and said while there Mr. Daniells obtained four guns with the intent of selling them in Massachusetts. Mr. Daniells told the witness that he removed the serial numbers from the guns. The witness said that Mr. Daniells told him he was selling three of the guns to an Hispanic male who lived on a certain street in Framingham. The witness later identified the buyer from a photographic array.

On September 28, 2015, the ATF executed a search warrant at defendant's mother's house in Framingham and seized tools for obliterating serial numbers, firearm keys, and an ammunition box.

The government has evidence that defendant purchased fourteen guns in Pennsylvania. He was arrested in March 2014 in Massachusetts in possession of one of the guns, which was loaded at the time, and was charged in the Waltham District Court with illegally possessing it. He was released on bail from that charge on October 8, 2014. Thus he was on release on that case at the time he allegedly committed the crimes here.

The government alleges that the straw purchaser in Pennsylvania bought eight additional guns for Mr. Daniells. One of these guns was sold to the co-defendant, Mr. Bailey, as set out above.

Four of the twenty-two guns that Mr. Bailey bought from the straw purchaser or for himself have been recovered - three in Massachusetts and one in New York City. Two of the guns that were recovered in Boston were connected to persons known to be street gang members by the Boston Police Department.

When the ATF began investigating the straw purchaser, Mr. Daniells told the purchaser

during a recorded call to lie to the ATF about the sales of guns to him.

II. LEGAL STANDARD

In his motion for reconsideration, defendant correctly points out that this court mistakenly stated in the detention order that this case involved a rebuttable presumption under 18 U.S.C. § 3142(e) (#69 at 5). The District Court, relying on this court's order, echoed this application of the rebuttable presumption in declining to revoke the detention order, stating that it agreed "with the Magistrate Judge that the defendant has not rebutted the presumption of dangerousness" and "disagree[d] with the Magistrate Judge's conclusion that the defendant had rebutted the presumption of risk of flight" (#82 at 2). Defendant rightly points out that there is no rebuttable presumption in this case (#69 at 5).

The court therefore reconsiders the question of Mr. Daniells' detention under the proper standard. Under the Bail Reform Act, a person may only be detained pending trial if the government establishes by clear and convincing evidence that the person poses "a danger to the safety of any other person or the community if released" or by a preponderance of the evidence that the person poses a serious risk of flight. 18 U.S.C. § 3142(f); *United States v. Patriarca*, 948 F.2d 789, 791-793 (1st Cir. 1991). If there is some risk, the Court should consider whether a combination of release conditions "will serve as a reasonable guard." *Id.* at 791.

In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the accused, including family ties, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). Each of these factors must be

4

weighed, and the decision whether to release is an individualized one. *Patriarca*, 948 F.2d at 794.

The government bears the burden of persuasion to establish that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991).

    A. <u>Risk of Flight</u>

While this court originally found that the government had failed to meet its burden on the defendant's risk of flight, (#69 at 7), in light of the District Court's disagreement with this finding, this court now reconsiders that issue. In preparation for writing this report and recommendation the court has again carefully reviewed all the available materials concerning this case, including the original Pretrial Services report and update; the government's memorandum regarding its pretrial order of detention (#66), which sets out the alleged facts of the case in detail, *id*. at 2-5; the 52-page transcript of the initial detention hearing at which ATF Agent Brian Oppedisano testified (#32); defendant's motion for release and accompanying exhibits (#63); the transcript of the second detention hearing before this court (#75); the government's supplemental memorandum regarding detention (#80); defendant's supplemental submission (#81); the transcript of the hearing before Judge O'Toole (#95); Judge O'Toole's order (#95); and defendant's motion for reconsideration (#109).

Even though the defendant does not face a rebuttable presumption, the factors weighing in favor of detention on risk of flight are considerable. As the District Court pointed out, Mr. Daniells has many contacts outside of Massachusetts including an alleged straw buyer of handguns in Pennsylvania (#82 at 2). In 2008 he lived in Fort Collins, Colorado, with his sister,

5

where he worked as a pharmacy technician at a local pharmacy (#63 at 2). He began working in the fracking industry in 2010 in Colorado, North Dakota, Texas, and Pennsylvania, and he has also worked in the moving and storage industry in Virginia. *Id.*

Mr. Daniells previously proposed that he live with his mother in Framingham. The District Court found that proposal to be problematic as his mother works all day and so would not be home to act as a custodian, he was living at his mother's house at the time of this crime, and incriminating items including tools for obliterating serial numbers from guns were found at his mother's house. In his motion for reconsideration Mr. Daniells proposes that he reside in Lawrence with a female friend of his whom he has known since 2015, who has two teen-aged sons, or that he be released to a halfway house. After carefully considering these options and the other conditions of release that Mr. Daniells proposes, (#109 at 5, 11) this court finds that no conditions will reasonably assure the appearance of Mr. Daniells. The court finds that the government has met its burden on risk of flight for the following reasons. The evidence against Mr. Daniells is strong. The crime charged is serious. The court previously had not sufficiently taken into consideration the fact that Mr. Daniells has many contacts outside Massachusetts and apparently is mobile, having worked in what he characterizes as lucrative employment in several different states.

The court does not find that conditions proposed such as electronic monitoring or having a curfew would be effective in preventing flight. Electronic monitoring is useful when the court does not want an accused person visiting certain areas or wants to ensure that they stay at their home rather than roaming around freely at night. If someone is going to flee, they can cut the electronic monitor off and leave.

B.  <u>Dangerousness</u>

As the court previously found, the evidence is strong that Mr. Daniells sold guns in Massachusetts to those whom he knew could not lawfully possess them, not once but several times, over a period of time.  This is a dangerous business and at least two of the guns ended up in the hands of people in Boston with ties to gangs.   The court considers this activity to be a callous and extreme risk to public safety.  This was not a one-time action, nor is there evidence that Mr. Daniells was pressured to engage in this business by a government agent.  He devised a relatively organized scheme to deal in firearms, which entailed legally buying guns himself, or enlisting another person to buy them for him, and travelling to Massachusetts to sell them.  These facts are supported by a government witness who says that he went to Pennsylvania with Mr. Daniells, who told him that he was purchasing firearms to bring to Massachusetts and that he would obliterate the serial numbers from the firearms.  This witness then identified a person in Massachusetts to whom Mr. Daniells sold multiple guns.

Obliterating the serial numbers was part of the scheme so that Mr. Daniells could conceal their connection to him.  This is an act performed precisely because a seller knows that what they are doing is illegal, that the guns may be used in serious crimes, and that it is important that the guns not be traced back to him.  The tools that were found at Mr. Daniells' mother's house support the government's accusations about his practice of obliterating serial numbers.

When he learned he was under investigation he told a witness to lie, on a recorded call.  This strongly supports the government's moving for detention because there is a serious risk that he will obstruct or attempt to obstruct justice.

As stated in the court's previous order, it is very significant to this court that Mr. Daniells

was charged with committing the present crime while on release from another court. This signifies not only that he does not comply with court orders, but he does not seem to be deterred from committing crimes by the specter of already being charged with one. With regard to the charge he was facing in Waltham at the time he committed this offense, the court finds that Mr. Daniells' protestations that he was simply exercising his Second Amendment rights by having a firearm in a car incredible. It is common knowledge that laws pertaining to carrying firearms differ from state to state and that having a license in one state does not entitle one to carry a firearm in another. Our state of Massachusetts has some of the strictest gun control laws in the country. In light of the strong evidence that he allegedly was illegally purchasing multiple firearms through a straw purchaser and bringing them to Massachusetts, obliterating their serial numbers, and selling them to people who had no right to have them, his claimed naiveté as to firearms laws rings hollow.

Mr. Daniells states in his motion for reconsideration that the court erred because it did not consider all the relevant facts in the case (#109 at 6). There is no legal requirement that a court deciding a detention issue go through each individual factor in its written order. This court has exhaustively reviewed all the materials in this case, including those presented by the defendant, has considered all of the statutory factors, and finds that the government has met its burden both on risk of flight and dangerousness and there are no conditions that would assure the appearance of the defendant or the safety of the community.

    III. INEFFECTIVE ASSISTANCE

Prior counsel was not ineffective for counseling defendant to postpone his detention hearing (#109 at 12) or for the other reasons proffered in defendant's motion for reconsideration,

*id*. at 14-15. Even if the defendant could show that his attorney misinformed him about detention procedures, defendant has to show prejudice, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), which he cannot do, because regardless when the detention hearing was held, Mr. Daniells would have been detained.

IV. CONCLUSION

For the reasons stated above the court recommends that the District Court deny the motion for reconsideration (#109).

/s/ M. Page Kelley  
M. PAGE KELLEY  
United States Magistrate Judge

February 16, 2017