FILED
IN CLERKS OFFICE

2018 OCT -1 PM 12: 57

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
) CRIMINAL No. 1:15-cr-10150-GAO
)
v. )
)
)
MITCHELL DANIELLS )
)
)

## MOTION TO MEDIATE MATTER OR WITHDRAW/APPOINT COUNSEL

Here comes the defendant Mitchell Daniells, (Daniells), pro se, in the above captioned matter who hereby requests that this Honorable Court to compel my attorney, Max D. Stern, (Stern) to comply with clients reasonable requests or to ask that he willing withdraws from my defense and have substitute counsel appointed. Daniells avers and states applicable reasoning for his request as follows:

1. Mr. Stern is refusing to bring an "actual" opposed to a "potential", conflict of interest issue, between predecessor counsel Gordon W. Spencer (Spencer) and I, to the attention of the court. Spencer knowingly labored under a conflict of interest when he continued represent me (or lack there of), after he was implicated in an obstruction of justice/witness tampering investigation, pertaining to my case; to which I suffered an immense prejudice due to the inadequate defense. See (EXHIBIT A)  See. US v. Greig, 967 F.2d 1018 ("After finding defense counsel has a conflict of interest, court must conduct a hearing... it does have duty to conduct a hearing once it has been alerted and certainly when it knows of existence of an actual conflict of interest.") Stern's unwillingness to raise this issue shows his inability to provide a devoted vigorous defense and loyalty. His loyalties may lie elsewhere; when it comes to challenging fellow CJA attorneys.

Pg. 1

2. Counsel is refusing to seek the assistance of the Court in the acquisition of necessary "work related product(s)", in the form of — original notes and material turned over to Spencer by Michael R. Schneider, Spencer's threatening notes to me about "fry" on the stand, (which he does not deny and admitted to in open Court before Judge O'toole as witness), billable hours etc. pursuant to the Massachusetts Rules of Professional Conduct 1.16 Termination of Representation section (6), subsection (e) "work related product". Co-Counsel Mary Nguyen emailed Spencer requesting it, See (EXHIBIT B), to which he refused to turn over. Spencer obtained it from Schneider, and may never have returned according to Schneider. See (EXHIBIT C). We need said materials for a zealous defense.

3. Refusal to request bail, despite the unconstitutional 5th amendment Due Process Violation for an excessive pretrial detention, see. US v. Salerno 794 F.2d 64 ("...a majority of the panel is in agreement that the Due Process Clause prohibits pretrial detention on the ground of danger to the community as a regulatory measure, without regard to the duration of the detention.") For a non violent offense. See. Glover v. US, 531 US. 198, 203, 121 S.Ct. 696, 148 L.Ed 2d 604 ("Any amount of additional jail time has Sixth Amendment significance") It has been widely accepted and proven as "fact" opposed to opinion, that the Criminal Justice System, is a racist institution that disproportionately targets African American men specifically and minorities in general. Senator Elizabeth Warren and others have stated so as of recently see. (EXHIBIT D)

4. Infrequent communication, average of one visit every three months and an average of one phone call every 3 to 4 weeks for 15 to 30 minute intervals is not adequate communication.

Pg. 2

5. In addition to the refusal to perform the basic requests counsel have repeatedly provided affirmative misinformation in regards to my criminal matter by —

   (i) Telling me there is no such thing as a 3 point reduction, for exceptance of responsibility and timeliness; only 2 points, at my initial arrest and arraignment. to undermine the fact I've been unconstitutionally detained as a punishment for well over 40 months where my initial sentencing guideline range was 2 to 8 months;

   (ii) That the Mass. R. Prof. C. "does not apply in the Federal Courts." in direct contrast to Local Rules 83.6.1 Rules of Professional Conduct, which states the Mass R. Prof. C. applies "in all matters... before this Court."

   (iii) Mary incorrectly told me all defense attorneys are "immune" from legal malpractice civil suit.

   (iv) She also incorrectly stated the recent Supreme Court ruling on Carpenter v. US; does not apply to me, that she is certain of this because of her involvement in another Supreme Court case of a local man "Wurie." Was I to rely (which I have in some instances) on these serious misinformation, I would find myself in an even more untenable position than I already am in. See. Padilla v. Kentucky, 559 US 356 ("... When the ... consequence is truly clear, as it was here, the duty to give correct advice is equally clear... We agree that there is no relevant difference 'between an act of commission and an act of omission.'")

6. Counsel is aware of my difficult and vulnerable position due to past experiences with prior defense attorneys, so they shirk their responsibilities to frustrate my efforts pushing me to seek aide from the Courts, making me to appear "difficult" when in

Pg. 3

reality their misinformation and reluctance to provide vigorous, zealous defense in the most basic tasks is creating the problems in our attorney-client relationship. If he does not want to represent me I ask that he withdraw himself immediately, due to this irreparable breakdown. I suffer from learning disabilities and need an attorney, who isn't racist to represent me.

## AFFIDAVIT IN SUPPORT OF MOTION

I, Mitchell Daniells, do hereby depose and state as follows:

7. That I Mitchell Daniells, am the defendant in the aforementioned matter.

8. That I have made all statements truthfully, and to the best of my knowledge.

9. That my intentions for this motion to be submitted as a "last ditch effort" having tried to reconcile the problem between myself and ~~Sharon~~ to no avail.

## MEMORANDUM OF LAW

Counsel owes a client, a duty of loyalty, a duty to avoid conflicts of interest, a duty to advocate the defendants cause, consult on important decisions, informed of important developments in the course of the prosecution, and a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. See Cuyler v. Sullivan, supra at 346, 64 L ED 2d 333, 100 S. Ct. 1708.; Powell v. Alabama, 287 US at 68-69 77 L ED 158, 53 S.Ct. 55, 84 ALR 527, Cited in Strickland v. Washington, 466 US 668, 80 L ED 2d 674, 104 S. Ct. 2052 (1984).

Pg. 4

## PRAYERS FOR RELIEF

10. Order attorney Stern to perform the requested task or dismiss him and appoint new counsel as this Honorable Court so deems.

11. Order predecessor counsel Gordon Spencer to turn over request "work related product" in his possession; and Michael Schneider as well.

12. Order any other relief as this Honorable Court deems as just and fair.



The Commonwealth of Massachusetts
On this 27 day of SEPTEMBER 20 18, before me, the undersigned notary public, personally appeared MITCHELL DANIELLS proved to me through satisfactory evidence of identification, which were JAIL ID to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.
ROBERT J. LALIBERTE, Notary Public
My Commission Expires May 2, 2019

Respectfully Submitted,

Mitchell Daniells, pro se

## PROOF OF SERVICE

I, Mitchell Daniells, pro se, do hereby certify that on this date, 27th September 2018, I did mail first class by the US Postal Service the forgoing to all applicable parties.

Mitchell Daniells, pro se

Pg. 5

EXHIBIT A

| Title of Investigation: DANIELLS, Mitchell | Investig. Number: | Report Number: |
|---|---|---|

8. BROBBY said at some point he met BIKO in person. BROBBY said BIKO's tone of voice and body language made BROBBY uncomfortable as BIKO was talking about BROBBY talking to the police regarding DANIELLS.

9. BROBBY said BIKO also three wayed a call with DANIELLS from jail. During that conversation DANIELLS told BROBBY about obstruction of justice, BROBBY's right not to talk, and the need for BROBBY to hire an attorney.

10. BROBBY said after the conversation BIKO texted him a list of attorneys from the phone number ███ 3894.

11. BROBBY said BIKO set up a meeting with DANIELLS attorney Gordon Spencer which BROBBY and BIKO both attended.

12. BROBBY said Spencer advised him to flee or not show up. BROBBY said Spencer said if BROBBY shows up DANIELLS will get 10 years.

13. BROBBY said at some point BIKO called him and started asking him about other witnesses to see if BROBBY knew who or where they were. BROBBY remembers the names "Jessica" and "Ashley".

14. BROBBY said BIKO also told him if he knew how many lowlifes DANIELLS was hanging with he wouldn't have involved himself.

15. BROBBY also said he talked to DANIELLS sister Esther on two occasions regarding DANIELLS trial.

16. BROBBY said during a conversation with DANIELLS from jail, DANIELLS advised him to see a common friend to get $500.00 for BROBBY to get an attorney so he could plead the fifth. BROBBY said he already got a loan of $500.00 from the same person. BROBBY said the person was Alcides VALENTIN from Worcester, MA.

DANIELLS-2415

FILED IN CLERKS OFFICE 2018 OCT -1 PM 12: 57 U.S. DISTRICT COURT DISTRICT OF MASS.

**Nguyen, Mary L.**                                    EXHIBIT B

**From:** Gordon Spencer <attyspencer@aol.com>
**Sent:** Friday, June 01, 2018 2:47 PM
**To:** Nguyen, Mary L.
**Cc:** santiagomargarita555@gmail.com
**Subject:** Re: Mitchell Daniells

Hi mary

1) i have no such note

2) originals dont have

3) can have the suit available on tuesday

Sent from my iPhone

On Jun 1, 2018, at 2:44 PM, Nguyen, Mary L. <mnguyen@toddweld.com> wrote:

> Attorney Spencer,
>
> Mitchell has requested the following items that you may still have in your possession. I looked through the files you transferred to us but was not able to locate the following:
>
> 1) A handwritten note that was apparently written during a court hearing about "frying" Mitch on the stand;
> 2) The original hand written notes from Attorney Schneider (I only see a folder with photo copies); and
> 3) Mitchell's suit (he needs for trial)
>
> Please let me know either way if you have these items. If you do we can send a courier to retrieve them.
>
> Thank you,
> Mary
>
> Mary L. Nguyen
>
> <image001.jpg>
> Todd & Weld LLP
> One Federal Street, Boston, MA  02110
> Tel:  617.624.4708  Fax:  617.624.4808
> www.toddweld.com

1

**GORDON W. SPENCER**
*Attorney at Law*
945 Concord Street
Framingham, MA 01701

---

Tel (508) 231-4822
Fax (508) 231-4824
attyspencer@aol.com

EXHIBIT C page 1

April 30, 2017

**VIA ELECTRONIC TRANSMISSION AND
FIRST CLASS MAIL**

Mr. Michael R. Schneider, Esq.
**GOOD, SCHNEIDER, & CORMIER**
83 Atlantic Avenue
Boston, MA 02110

RE: Mitchell Daniells

Attorney Schneider:

As you are aware, via previous correspondence you have sent to this office, I have been hired by Mr. Mitchell Daniells relative to a pending criminal matter in the United States District Court for the Eastern District of Massachusetts. In reviewing the file received from your immediate successor, Attorney Derege Demisee, and after speaking with Mr. Daniells, it appears that the current file in my possession lacks the following "work product":

- "All" correspondence between your office and AUSA Glenn MacKinlay relative to your representation of Mr. Daniells. Said correspondence would include but not be limited to emails, faxes, and text messages;

- "All" correspondence between your office and Attorney Victoria Bonilla (who I believe was CJA counsel for Timothy Bailey), which would also include the same types of correspondence described above;

- Any additional correspondence in your files, stored on your computer, outlook, or other email operating system, which was generated in connection with the representation of Mr. Daniells;

- All "originals" of notes generated by you (or any employees in your firm) as a consequence of any telephonic or in-person communications between your firm and Mr. Daniells; and

- All billing logs, demonstrating date and time worked, and scope of work

Page 2
Mr. Michael Schneider
April 30, 2017

  Mr. Daniells makes this request pursuant to our Massachusetts Rules of Professional Conduct 1.16 – "Termination of Representation". Subsection (e) of said rule requires, "within a reasonable time" following the client's request for his or her file, that you provide the information outlined above. I note that section (6) of subsection (e) defines "work product" as, *inter alia,* "correspondence".

  It has also come to my attention that Mr. Daniells has made this request from your office, since your withdrawal from the case as of August of 2016, and that a subsequent request had been made via Attorney Demisse[1] without success. As such, it is imperative that you comply with this request as soon as you are able. You may not be aware, but Judge O'Toole has scheduled this trial for **June 5, 2017,** and I am newly retained counsel, and I need the information requested above in order to provide a zealous defense on behalf of Mr. Daniells. Any further delay will serve as a profound detriment to Mr. Daniells.

  In no way do I submit this request, and with it citing the Rules of Professional Conduct, in order to be antagnostic. I have spoken to Mr. Daniells sister, "Esther" who informs me that she has no objection, in paying any copy fees, in an attempt to make this transfer of information as seemless as possible. I am just merely trying to obtain what Mr. Daniells should have, and I need to send you correspondence to get it. I do however cite the rules to impress upon the serious nature of this matter. If in the event that you want to talk about this further, I am available day or night. You can call me on my cell phone at (617) 304-4423. The last thing I want is to be on opposite sides of this coin. Perhaps we can work together via open lines of communication in order to try and get a favorable result for the client.

  Thanks again for your anticipated cooperation.

Very truly yours,

Gordon Spencer Esq.

cc:   Mr. Mitchell Daniells.

---

[1] The claim that Attorney Demisse has made this request upon you comes from Mr. Daniells. I have not confirmed this with Attorney Demisse, but I should note that I have not seen correspondence from Attorney Demisee to your office in the file. Perhaps the request was made verbally, but I just wanted to relay Mr. Daniells' sentiment.

# Warren says criminal justice system 'racist ... front to back'

NEW ORLEANS — Potential Democratic presidential candidate Elizabeth Warren delivered what she called "the hard truth about our criminal justice system. It's racist ... I mean front to back."

While speaking at a historically black college, the Bay State's senior senator identified some of the system's failures: disproportionate arrests of blacks for petty drug possession, an overloaded public defender system, and state laws that keep convicted felons from voting even after their sentences are complete. Warren was participating in a Q&A session hosted by Congressional Black Caucus Chairman Cedric Richmond at Dillard University in New Orleans as part of the Netroots Nation annual conference for progressives.

She was among several possible Democratic White House contenders who spoke Friday at the conference. She was the only leading Democrat to appear at Dillard.

The stop is the latest sign of Warren's effort to forge ties beyond her largely white political base in Massachusetts and avoid the fate of fellow progressive icon Bernie Sanders, who struggled to win black Americans his failed bid for the Democratic presidential nomination. Facing re-election to the Senate this year, Warren did not directly address her 2020 plans when Richmond asked her what might have changed since she said she did not to run in 2020, the senator was ready with "Two Words," Warren said before shifting to warn the audience that the November midterm vote is an immediate fight as Democrats try to break control of Congress.

— ASSOCIATED PRESS



**TALKING POINTS:** Sen. Elizabeth Warren speaks at Dillard University in New Orleans on Friday. AP PHOTO

BOSTON SUNDAY HERALD    AUGUST 5, 2018

---

## Trial i[...]

The tria[...] charged w[...] father in C[...] Trinity Ch[...] with a hun[...] Suffolk Sup[...] prosecutor[...] case again[...]

Jake Wa[...] for District[...] Conley, con[...] in a brief s[...] a hearing i[...] to schedule[...] case agains[...] 30.

Jordan [...] year-old Al[...] of two girls[...] Aug. 22, 20[...]

Jurors b[...] Tuesday aft[...]

THURSDAY, MAY 24, 2018

# Racial sentencing disparities revisited

## GOP judges found harder on blacks

**By Christopher Ingraham**
WASHINGTON POST

Federal judges appointed by Republican presidents give black defendants sentences that are, on average, six to seven months longer than the sentences they give to similar white defendants, according to a new working paper from Alma Cohen and Crystal Yang of the Harvard Law School.

That racial sentencing disparity is about twice as large as the one observed among judges appointed by Democrats, who give black defendants sentences that are three to four months longer than the sentences they give to white defendants with similar histories who commit similar crimes.

Cohen and Yang estimate that differences between how Democratic and Republican judges treat black and non-black defendants account for 65 percent of the total racial sentencing gap observed at the federal level.

To arrive at these numbers, Cohen and Yang examined over 500,000 sentences handed down by nearly 1,400 federal judges between 1999 and 2015.

By merging data sets from the US Sentencing Commission, the Federal Judicial Center and Syracuse University's Transactional Records Access Clearinghouse, the authors were able to see how the individual characteristics of federal judges, like demographics

Democratic and Republican judges treat defendants account for 65% of the racial sentencing gap.

and the political affiliation of their appointing president, influenced the sentences given to various types of federal criminal defendants.

Federal judges are assigned to specific cases at random, setting up the sort of natural experiment that can yield valuable insights in social science research — no need to worry about judges shopping for certain kinds of cases, or defendants or prosecutors shopping for certain judges.

But to arrive at their conclusions, Cohen and Yang still had to correct for many other factors that play into sentencing decisions: Federal sentencing guidelines that judges must consult but not necessarily adhere to, and the discretion of federal prosecutors to decide which charges to bring in a given case, to name a few.

They found that the difference in the racial sentencing gaps observed for Democratic and Republican judges could not be explained by differences in the use of sentencing guidelines, prosecutors' decisions, or judge characteristics like race, gender, or former prosecutorial experience.

They did find, however, that the gap between sentences for black and white defendants was smaller for more experienced judges than for less experienced ones.

They also found that differences between how Republican and Democratic judges treat black and white defendants grew larger following the Supreme Court's 2005 decision in the United States v. Booker, which gave federal judges much more leeway to depart from federal sentencing guidelines.

Cohen and Yang also found one important geographical effect: Black defendants fared particularly poorly in states with high amounts of population-level racial bias.