## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) Criminal No. 1:15-cr-10150-GAO |
| | ) |
| | ) |
| MITCHELL DANIELLS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT MOTION TO DISMISS FIREARM CHARGES
## ON CONSTITUTIONAL GROUNDS

### Introduction

Defendant Mitchell Daniells, ("Mr. Daniells" or "Defendant"), respectfully requests that this Honorable Court dismiss Counts 1 though 5 of the superseding indictment that charges him with possession of a firearm while under indictment and dealing in firearms without a license on the grounds that they are unconstitutional. As further grounds, Mr. Daniells states as follows:

### Argument

The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Its importance in the constitutional architecture has been described by Justice Joseph Story as "the palladium of the liberties of a republic." 3 J. Story, Commentaries §§ 1890-91 (1833). Only those laws and regulations that substantially burden the right to keep and bear arms for the purpose of self-defense run afoul of the Second Amendment. See Dist. Of Columbia v. Heller, 554 U.S. 570, 595 (2008) ("The right was not unlimited, just as the First Amendment's right of free speech was not ... [W]e do not read the Second Amendment to protect

the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.")

The Supreme Court has indicated that some form of heightened scrutiny is necessary for laws that infringe on core Second Amendment rights. In <u>Heller</u>, the Supreme Court declined to state what level of review is appropriate for statutes that infringe on the core Second Amendment right to bear arms for the purpose of self-defense. It stated that the right to bear arms is a fundamental right, <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 769 (2010), hinting that strict scrutiny might be appropriate, <u>see</u>, e.g., <u>Clark</u>, 486 U.S. at 461 ("[C]lassifications affecting fundamental rights . . . are given the most exacting scrutiny").

**I.      § 922(a)(1) Is Unconstitutionally Overbroad Because It Captures Lawful Gun Owners in Its Reach.**

In 2008, the Supreme Court ultimately held that in addition to "preserving the militia," the Second Amendment guarantees an individual the right to keep and bear arms. <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570, 599 (2008). The "core" of the Second Amendment protects the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Id.</u> at 634-35. The Court explained that "[l]ike most rights, the right secured by the Second Amendment is not unlimited," but restrictive statutes that seek to expand the limit on the right would run afoul of the constitution.  The Court identified presumptively lawful statutes as those that cover "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." <u>Id.</u> at 626-627. None of those prohibitions are at issue here.

18 U.S.C. § 922(a)(1)(A) makes it unlawful "for any person . . . to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship,

transport, or receive any firearm in interstate or foreign commerce." According to the statute, a person is so engaged when he or she "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C). To conduct business "'with the principal objective of livelihood and profit' means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." 18 U.S.C. § 921(a)(22). In this vein, the statute explicitly exempts those who "make[ ] occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell[ ] all or part of [their] personal collection of firearms." 18 U.S.C. § 921(a)(21)(C). See United States v. Tarr, 589 F.2d 55, 60 (1st Cir. 1978) (holding appellant's single case of firearm to dealers does not establish appellant engaged in dealing in firearms); United States v. Wilmoth, 636 F.2d 123, 125 (5th Cir. 1981) (*citing* United States v. Masters, 622 F.2d 83 (4th Cir. 1980)) (to prove defendant engaged in business of dealing in firearms, "Government must show a greater degree of activity than the occasional sale of a hobbyist"); United States v. Huffman, 518 F.2d 80, 81 (4th Cir. 1975) (holding "while the Government need not prove an actual profit from sales of firearms, it must show a willingness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist").

§ 922(a)(1)(A) is overbroad as it imposes unconstitutional restrictions on the constitutional right to bear arms, as provided in the Second Amendment. Statutes that criminalize access to guns by particular classes of individuals burden Second Amendment rights. See United States v. Reese, 627 F.3d 792, 800 (10th Cir. 2010). The phrase "engage in the business of" is impermissibly vague as it necessarily encapsulates those actions which the Second Amendment

was designed to protect. The Second Amendment, envisioned by the Founders as "fundamental to the newly formed system of government," has repeatedly been upheld by the Supreme Court. McDonald v. City of Chicago, 561 U.S. 742, 769 (2010) (finding Second Amendment "fundamental" to "our system of ordered liberty"). Expanding § 922(a)(1) so as to capture lawful owners who occasionally sell a lawfully-purchased firearm is constitutionally and statutorily overbroad. In sum, the statute is unconstitutionally broad and is unconstitutional as applied in Mr. Daniells' case.

**II.      § 922(n) Is Unconstitutionally Vague as Applied in this Case.**

A criminal statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008). "Of these, the more important aspect of the vagueness doctrine is . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." City of Chicago v. Morales, 527 U.S. 41, 65 (1999).

Here, the statute is unconstitutionally vague because it fails to define what, precisely, an indictment is. Thus, a defendant who is charged by a state court with an information would not know that an information could be interpreted to be the equivalent of a federal indictment. Here, Mr. Daniells was charged with an information in Waltham District Court for the State of Massachusetts but had no way of knowing that such information was the equivalent of a federal indictment. Thus, § 922(n) is unconstitutionally void for vagueness and should be dismissed.

**III.     § 922(n) Is Unconstitutional Because It Violates the Constitution's Bar on Bills of Attainder.**

"'[L]egislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them

without a judicial trial are bills of attainder prohibited by the Constitution.'" <u>United States v.</u> <u>Brown</u>, 381 U.S. 437, 448-49 (1965) (*quoting* <u>United States v. Lovett</u>, 328 U.S. 303, 315 (1946)). With this clause the Framers "sought to prohibit the ancient practice of the Parliament in England of punishing without trial 'specifically designated persons or groups.'" <u>Selective Serv.</u> <u>Sys. v. Minn. Pub. Interest Research Grp.</u>, 468 U.S. 841, 847 (1984) (*quoting* <u>Brown</u>, 381 U.S. at 447). Three requirements must be met to establish a violation of the bill of attainder clause: "[S]pecification of the affected persons, punishment, and lack of a judicial trial." <u>Selective Serv.</u> <u>Sys. v. Minnesota Pub. Interest Research Group</u>, 468 U.S. 841, 847 (1984).

> **a. Pursuant to § 922(n), the specified affected persons are those under indictment for a crime punishable by imprisonment for a term exceeding one year.**

"The prohibitions on 'Bills of Attainder' in Art. I, §§ 9-10," of the United States Constitution "prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct." <u>Lynce v. Mathis</u>, 519 U.S. 433, 439 n. 12 (1997) (*citing* <u>United</u> <u>States v. Brown</u>, 381 U.S. 437, 456–62 (1965)). § 922(n) specifies with particularity that the affected persons are only those under indictment for a crime punishable by imprisonment for a term exceeding one year. Here, the fact that Mr. Daniells was charged with information in the Waltham District Court for the State of Massachusetts renders him an indicted person within the meaning of the statute. In <u>Cummings v. Missouri</u>, the Supreme Court invalidated a Missouri constitutional amendment that prohibited people from working in certain professions unless they swore under oath that they had not provided aid to the Confederate army.  71 U.S. 277 (1866). The Supreme Court determined that even though individuals could escape the punishment by testifying under oath, the statute was still a bill of attainder because it identified the affected

group by immutable past conduct. Id. at 318. Here, the statute similarly punishes individuals on immutable past conduct and, as such, qualifies as a bill of attainder.

### b. Pursuant to § 922(n), it punishes indicted persons who ship or transport firearms in interstate commerce.

A "bill of attainder" refers to "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Selective Serv. Sys. v. Minnesota Pub. Interest Research Grp., 468 U.S. 841, 846–47 (1984) (quoting Nixon, 433 U.S. at 468). "In deciding whether a statute inflicts forbidden punishment, [the Supreme Court] ha[s] recognized three necessary inquiries: 1) whether the challenged statute falls within the historical meaning of legislative punishment; 2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and 3) whether the legislative record 'evinces a congressional intent to punish.'" Id. at 852 (citing and quoting Nixon, 433 U.S. at 473, 475–76, 478). Punishment serves several purposes; retributive, rehabilitative, deterrent—and preventive. One of the reasons society imprisons those convicted of crimes is to keep them from inflicting future harm, but that does not make imprisonment any the less punishment. United States v. Brown, 381 U.S. 437, 458 (1965).

Here, the statute is a criminal code which expressly forbids certain conduct by a certain group of individuals who share the immutable characteristic of being under indictment. The penalties include fine or potential imprisonment, both of which are considered punishment. Here, however, the statute seeks to punish those who have not yet been adjudged guilty of the indicted charge, which is a procedural due process violation.

The Fifth Amendment provides that no one "shall be deprived of life, liberty, or property without due process of the law." U.S. Const. amend V. "When government action depriving a

person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner . . . This requirement has traditionally been referred to as 'procedural due process.'" United States v. Salerno, 481 U.S. 739, 746 (1987). "Procedural due process rules are meant to protect persons . . . from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). It not only prevents the state from withdrawing benefits from those who are entitled to them, see Mathews v. Eldridge, 424 U.S. 319 (1976), but from depriving individuals of their rights wrongfully and needlessly. The Supreme Court has used procedural due process to determine the appropriate standard of proof required for civil commitment, Addington v. Texas, 441 U.S. 418 (1979); whether a defendant may be deprived of his liberty and detained pre-trial, United States v. Salerno, 481 U.S. 739 (1987); and whether an undocumented immigrant may be so deprived and detained pending deportation, Demore v. Kim, 538 U.S. 510 (2003).

Individuals under indictment have a procedural due process right not to be needlessly deprived of their liberties, including their Second Amendment rights. United States v. Laurent, 861 F.Supp.2d 71, 102 (E.D.N.Y. 2011). Under procedural due process, "standard analysis . . . proceeds in two steps: We first ask whether there exists a liberty ... interest of which a person has been deprived, and if so we ask whether the procedures followed . . . were constitutionally sufficient." Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011). To determine whether there have been sufficient procedural protections, courts rely on the test articulated in Mathews v. Eldridge, balancing 1) "the private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail." <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976).

Here, Mr. Daniells' liberty has been deprived because of an indictment without yet a trial or

otherwise finding of guilt. Additionally, § 922(n) imposes a new punishment for conduct already

punishable in the first indictment.

### c. Pursuant to § 922(n), the Defendant need not have been adjudged guilty of the indicted charge before it becomes unlawful for him to ship or transport firearms in interstate commerce.

Mr. Daniells was charged on March 18, 2014 for possession of a firearm in the Waltham

District of the District Court for the State of Massachusetts. That charge is still pending as Mr.

Daniells has not yet stood for trial. Accordingly, § 922(n) is impermissible on the basis that it

violates Mr. Daniells' constitutional right to be presumed innocent until proven guilty. The

Eastern District of New York, in analyzing the constitutionality of § 922(n) wrote:

> Because of the presumption of innocence, it is assumed until conviction that the defendant is not guilty of the initial indictment triggering criminal liability. Thus, for purposes of construing the statute, a defendant under indictment is a "law-abiding citizen" who remains eligible for Second Amendment protections.

<u>United States v. Laurent</u>, 861 F.Supp.2d 71, 102 (E.D.N.Y. 2011). Whereas the original

information, which serves here as the initial indictment, has not yet been adjudicated, it

cannot, under the Constitution's presumption of innocence, trigger potential criminal

liability for Mr. Daniells. Despite the fact that he is considered to be "under indictment,"

he is still a "law-abiding citizen." <u>Id.</u> Thus, any deprivation of rights is unlawful.

## Conclusion

Accordingly, the Defendant, by and through his counsel, moves this Honorable Court to

dismiss the charges against him.

Respectfully submitted,

*/s/ Derege B. Demissie*

_____
Derege B. Demissie
DEMISSIE & CHURCH
929 Massachusetts Avenue, Suite 101
Cambridge, MA 02139
(617) 354-3944
BBO# 637544

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 15, 2019.

/s/ *Derege B. Demissie*
DEREGE B. DEMISSIE